Brett A. Greenfield (SBN 217343)
21031 Ventura Blvd, Suite 1101
Woodland Hills, CA. 91364
(818) 724-7272 (voice)
(818) 806-4110 (facsimile)
Brett@818LawGroup.com

*Attorneys for Defendant Mark Roy Anderson*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK ROY ANDERSON,<br><br>Defendant. | Case No. 2:23-CR-00255-FLA<br><br>**DECLARATION OF BRETT A. GREENFIELD IN OPPOSITION TO GOVERNMENT'S DECLARATION OF BREACH; MOTION FOR FINIDING OF BREACH; AND DECLARATION OF FBI SA RICHARD T. HIGGINS**<br><br>DATE:  October 2, 2024<br>TIME:   9:00 a.m.<br>CTRM:  6B  - Hon. Fernando L. Aenlle-Rocha |
|---|---|

I, Brett A. Greenfield, declare as follows:

I am a partner with the 818 Law Group, LLP. and am an attorney of record for Defendant, Mark Roy Anderson. I am licensed to practice law in the State of California, and I am admitted to the practice in this Court.

///

///

1

**Alleged Breach Relating to Contested Facts Agreed to in Plea Agreement**

1. As stated in the introduction to the defendant's objection to the Presentence Report (PSR), Mark Anderson does not seek to shift responsibility, nor does he seek to change the facts for which he pled guilty.

2. In accordance with Application Note 3 under USSG § 2B1.1(b), Mr. Anderson believes he is entitled to argue credits against loss. Specifically, he asserts that he is entitled to credit for the money returned, the fair market value of property returned, and services rendered, whether performed by Mr. Anderson or by others acting jointly with him.

3. In *United States v. Blitz*, 151 F.3d 1002, 1012 (9th Cir. 1998), the courts recognized that "value may be rendered even for a fraudulent contract and that, in calculating intended loss, the district court should give credit for any legitimate services rendered to the victims."

4. In his objection, Mr. Anderson contended that the court must reduce the actual loss calculation by certain credits for any money returned, the fair market value of property returned, and for services rendered by the defendant or other individuals acting jointly with the defendant to the victim before the offense was detected (USSG § 2B1.1, Application Note 3(E)(i)).

5. Mr. Anderson did not dispute the approximate loss amount of $18 million; rather, he provided his investigation findings, indicating a potential credit of upwards of $9-$10 million as a matter of law against the reported loss.

6. Mr. Anderson relied on his plea agreement at paragraph 8, which indicates that the parties are allowed to argue whether certain sentencing characteristics, adjustments, and departures apply. Paragraph 8 also includes Mr. Anderson's understanding that he would

be permitted to argue whether he should or should not receive a non-guidelines sentence.

7.   In crafting his objection to the PSR, Mr. Anderson focused on (1) the indictment; (2) his plea agreement; (3) sentencing guidelines (particularly § 2B1.1); (4) the law related to credits against loss within Comment 3(a) under USSG § 2B1.1; (5) Federal Rules of Criminal Procedure § 32(c)(1)(C) regarding evidence hearings; and (6) USSG § 6A1.3 (presenting evidence at sentencing).

8.   This matter contains approximately 20,000 pages of discovery, including significant amounts of communications, individuals, contracts, financial data, and bank records, which have required extensive organization and comprehension. Mark Anderson's defense team has devoted thousands of hours to analyzing this information to determine the facts, the actual loss amounts, and potential credits. Defense counsel did not cease work following the conclusion of the change of plea hearing.

9.   Additionally, the investigation tracked numerous product shipments and thousands of emails spanning several years, creating an endless series of moving parts.

10.   For reference, the plea agreement was signed and entered on January 23, 2024. The change of plea occurred on April 5, 2024. The government produced a complete Cellebrite download of Mark Anderson's cell phone, which included multiple email accounts and thousands of pages of discoverable information on May 16, 2024, approximately 4.5 months after signing the plea agreement.

11.   The plea agreement, signed and filed in early January 2024, followed defense counsel's phone call in the weeks prior, notifying the United States Government that Mark Anderson intended to request a change of plea in the initially indicted matter and to plead

3

DECLARATION OF BRETT A. GREENFIELD IN OPPOSITION TO GOVERNMENT'S DECLARATION OF BREACH; MOTION FOR FINIDING OF BREACH; AND DECLARATION OF FBI SA RICHARD T. HIGGINS

openly to the court. This prompted the drafting and negotiation of the current plea agreement. The government was made aware early in the process that it was never Mr. Anderson's intention to go to trial, but to resolve this matter expediently and efficiently due to his advanced age and significant health concerns.

12. Additionally, at Mr. Anderson's direction, defense counsel attempted on several occasions to arrange a proffer session in order to explain the details of all the transactions and provide what he believed to be relevant and productive information for the government; however, the government declined.

13. Mr. Anderson waived indictment by the grand jury for the additional indictments and waived his right to appeal his sentence. His early disposition of the case was intended to ensure that the government could devote significantly more time and resources to other cases.

14. As detailed in the objection to the PSR, Mr. Anderson has expressed concerns that individuals Mr. Hooper and Mr. Mitchell, who were responsible for raising the money for the Harvest Farms deal, also received millions of dollars of product, inventory, and cash that had value and should have been repatriated to the victims.

15. Mr. Anderson's defense counsel has been requesting an interview with Mr. Hooper and Mr. Mitchell for the better part of six to seven months, expressing their concerns to the government about loss figures.

16. On January 4, 2024, defense counsel emailed the government to prepare a stipulation for a continuance of sentencing. The communication detailed defense counsel's need for further investigation regarding losses, specifically the financials related to Mr. Hooper and

4

DECLARATION OF BRETT A. GREENFIELD IN OPPOSITION TO GOVERNMENT'S DECLARATION OF BREACH; MOTION FOR FINIDING OF BREACH; AND DECLARATION OF FBI SA RICHARD T. HIGGINS

Mr. Mitchell. Defense counsel informed the government that Mr. Hooper was earning a 20% override on all money raised; Mr. Anderson was unaware of where the money went or how it was spent. Counsel also mentioned shipments of products and their effort to determine how much product was shipped, whether those products were viable, their value, and what Mr. Hooper and Mr. Mitchell did with those products.

17. In the same line of communications aimed at drafting the joint stipulation, the government acknowledged defense counsel's belief that a significant amount of money was returned to Mr. Hooper, and that counsel was attempting to trace that money and ascertain its disposition. The government also acknowledged that defense counsel believed products were shipped to Mr. Hooper, a fact that would at least serve as a mitigating factor. Additionally, the government recognized in that email that defense counsel faced challenges in tracking the details of shipments.

18. In that same email, the government recognized that they had recently produced the first set of raw data from Mr. Anderson's phone and that they were still reviewing that data, which was voluminous.

19. The government also acknowledged in that email that the parties were discussing a potential resolution of the case, along with the defendant's criminal liability for the Bio Pharma and Verta bottling fraud.

20. On January 9, 2024 (Docket 37), a joint stipulation to continue trial was filed in this court, with specific language identified in subsections C–G.

21. On January 18, 2024, defense counsel forwarded their initial cash flow breakdown by email to the government to illustrate the amount of money sent back as an offset for

losses. That figure has since been significantly amended as additional discovery was received and reviewed.

22. In a series of emails on January 18, 2024, in anticipation of signing the plea agreement, defense counsel assured the government that they were working as quickly and diligently as possible. They emphasized that they were not disputing acceptance of responsibility but merely pointing out some long-term mitigating factors and loss figures.

23. On April 1, 2024, defense counsel notified the government that they had spoken with Mr. Hooper, who indicated a willingness to speak with defense counsel as long as an FBI agent was present. Defense counsel then requested a mutually agreeable date and time for the interview. FBI Agent Richard Higgins responded, indicating that they were unavailable that week but were waiting to hear from the government regarding any potential interview plans. The government never responded to this request.

24. On April 16, defense counsel once again reached out to the government via email in an effort to arrange an interview with Mr. Hooper. They reminded the government that their investigator had spoken with Mr. Hooper, who was agreeable to an interview in the presence of the government or an FBI agent. Defense counsel requested a date to arrange that interview, but again, the government failed to respond.

25. On May 14, 2024, the government notified defense counsel of their intent to produce one last set of discovery, primarily consisting of subset data from the defendant's phone that had previously been produced. In response, defense counsel reiterated their request to schedule an interview with Mr. Hooper and Mr. Mitchell, as Mr. Hooper had agreed with defense investigators to do so in the presence of the FBI. Once again, the government did

not respond.

26. On July 15, 2024, defense counsel emailed the government to request a telephone call and to stipulate a continued date for sentencing, aiming to discuss loss amounts. After several emails exchanged, the government was unwilling to enter into a stipulation to continue or even to engage in a phone conversation.

27. On July 30, 2024, in an email to the government, defense counsel stated that their repeated requests for interviews with Mr. Hooper and Mr. Mitchell in the presence of the FBI were being ignored. Defense counsel again explained that they believed they possessed strong evidence suggesting that Mr. Hooper and Mr. Mitchell misled the FBI, made materially false statements in the complaint, and failed to inform the FBI or their investors about hundreds of thousands of dollars in payments collected by Mr. Hooper, as well as several million dollars' worth of products received by both Mr. Hooper and Mr. Mitchell, as evidenced by emails and shipping receipts. They emphasized to the government that they believed this had a significant impact on the alleged loss amounts for which Mr. Anderson is entitled to credits and reminded the government of their previous emails regarding this request.

28. Two days later, on August 1, 2024, the government responded by email, stating that whether Mr. Anderson shipped products to victims (or co-conspirators) as part of the fraud or that other individuals might also have stolen money from victims did not diminish Mr. Anderson's liability for his crimes. The government indicated that at most, defense counsel could dispute the amount of restitution, which would be handled by submitting a declaration from the case agent explaining how the government calculated restitution. The government

instructed defense counsel to provide actual evidence, not just statements from Mr. Anderson, to support their claim that the restitution figures were inaccurate. The government further mentioned that defense counsel could subpoena Mr. Hooper and Mr. Mitchell to appear at a restitution hearing but did not believe it was in Mr. Anderson's best interest to cross-examine victims.

29.    At the time of these emails, defense counsel was out of the country and did not return until August 7, 2024. Four days later, on August 11, 2024, defense counsel filed an objection to the PSR, including detailed loss and credit calculations based on evidence provided by the government.

30.    At that point, defense counsel believed that they had made numerous attempts to meet and confer with the government regarding the loss issue, had requested that the government stipulate to a continuance of sentencing in order to address these issues, but found themselves in a position where they had to file Defendant's objections to the PSR in a timely manner.

31.    Mr. Anderson does not seek to change the facts; he is not attempting to subvert his admissions of fraud. Instead, he is bringing calculations of loss and credits, derived from the very evidence provided by the government to the court's attention.

32.    The defendant has no intention to breach the agreement, and as communicated to the government, he would respectfully withdraw the objection to the PSR seeking the evidentiary hearing and a two-point downward departure if this court determines that the objection constitutes a breach of the plea agreement, instead arguing it as a consideration under 18 U.S.C. § 3553(a).

**Alleged Breach Relating to the Failure to Provide the Kemper Release**

1. On Sunday, April 21, 2024 in response to the government's April 18, 2024, email, which included the necessary release contained in the plea agreement to be signed by Ruth Kemper, defense counsel sent the form to Ruth Kemper's attorney.

2. The delay in sending the form to Ruth Kemper's attorney at an earlier date was simply an oversight.

3. On April 22, 2024, defense counsel notified the government that he had sent the required release to Ruth Kemper's attorney as requested and was awaiting her attorney's response.

4. As of today, Ruth Kemper, through her attorney, has ignored counsel's request and continues to refuse to sign the release, claiming that she is no longer the trustee of the trust that owns the property.

5. Kemper's outright defiance and refusal to cooperate cannot be held against Mr. Anderson.

**Alleged Breach Regarding Falsely Contesting Forfeiture**

1. On July 16, 2024, an individual completely unknown to defense counsel, named Damon Richie, filed a claim, statement of interest, and petition, claiming to be the new trustee of the trust that owned the Ojai property.

2. Defense counsel was notified about this filing by the government and through the notification on the ECF filing system. After conferring with the government, defense counsel immediately corresponded with Mr. Richie's attorney, whom he did not know and

had never met, instructing the attorney to withdraw the petition immediately, explaining that the petition could jeopardize Mr. Anderson's position in his criminal case. Mr. Richie subsequently withdrew the petition.

3. On July 29, 2024, AUSA Ryan Waters sent defense counsel a stipulation for an order authorizing the sale of the real property, which was immediately signed and returned at Mr. Anderson's direction.

4. On the same day, July 29, 2024, defense counsel, in a continued effort to ensure the property was sold at Mr. Anderson's direction, sent the stipulation for an order authorizing the sale of the real property to Mr. Richie's counsel, Jack Lentz, for signature and return.

5. On August 23, 2024, defense counsel signed a stipulation for an order authorizing the interlocutory sale of the real property and substitution of RES.

6. On August 26, 2024, this Court entered an order authorizing the interlocutory sale of the real property and substitution of RES.

**Evidence of Communications**

Many of the communications referenced in this declaration are written communications between defense counsel and the government. Counsel believes that there may be attorney-client privilege as well as subject matter contained within these communications that may be irrelevant to the specific issues at hand, and thus has not attached any exhibits.

Should the court require counsel to submit these exhibits beyond what is already summarized in this declaration, he would request that they be filed under seal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 30th of August 2024, at Los Angeles, California.

_____
BRETT A. GREENFIELD

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 21031 Ventura Boulevard, Suite 1101, Woodland Hills, California 91364.

On August 30, 2024, I served the foregoing document described as: **DECLARATION OF BRETT A. GREENFIELD IN OPPOSITION TO GOVERNMENT'S DECLARATION OF BREACH; MOTION FOR FINIDING OF BREACH; AND DECLARATION OF FBI SA RICHARD T. HIGGINS** on said parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY MAIL:** I am familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 30, 2024, at Los Angeles, California.

*J. Brantveyn* [E-Signature]

_____
Julie Brantveyn

# ATTACHED SERVICE LIST

**Kerry L. Quinn | Assistant United States Attorney**
Major Frauds Section
United States Attorney's Office, Central District of California
1100 U.S. Courthouse
312 N. Spring Street,
Los Angeles, CA 90012
(213) 894-5423 (office)
Kerry.L.Quinn@usdoj.gov (email)

13

**DECLARATION OF BRETT A. GREENFIELD IN OPPOSITION TO GOVERNMENT'S DECLARATION OF BREACH; MOTION FOR FINIDING OF BREACH; AND DECLARATION OF FBI SA RICHARD T. HIGGINS**